**Thomas J. HENRY and the Law Offices of Thomas J. Henry, Appellants,**

v.

**Robert LOW, D.O., and Stephen Smith, M.D., Appellees.**

No. 13–02–440–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

April 1, 2004.

Paul D. Andrews, Corpus Christi, for appellants.

Brian C. Miller, Carlos Villarreal, Hermansen, McKibben, Woolsey & Villarreal, Corpus Christi, for appellees.

## OPINION

Opinion by Justice WITTIG.[1]

This is an attorney sanction case arising out of a products liability and medical malpractice lawsuit. The underlying suit involved the death of Henry White, alleged to have been caused by the drug Propulsid and the related medical treatment. Thomas J. Henry and the Law Office of Thomas J. Henry ("Henry"), appellants, were attorneys for the widow, Joyce White, and the estate of Henry White. Henry appeals an order granting $50,000 in sanctions sought by two of the multiple defendants in the underlying cause, Robert Low, D.O., and Stephen Smith, M.D. (the "Doctors"), appellees. Henry contends that the trial court abused its discretion both by granting sanctions and in the amount of the sanctions it imposed. We reverse and render.

## I. PROCEDURAL BACKGROUND

Henry filed suit on behalf of the widow and the estate of White against Johnson and Johnson, Inc., Janssen Pharmaceutica

---

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp.2004).

and related companies, Coastal Bend Hospital, Inc., a nurse, and eight physicians, including the Doctors, on January 31, 2002. Contemporaneously, Henry filed a motion to withdraw, stating he had a conflict of interest. The suit was filed five days before the statute of limitations ran. The trial court signed an order granting the motion to withdraw on May 6, 2002. The Doctors answered and filed motions for sanctions pursuant to rule 13 [2] of the rules of civil procedure and chapters 9 [3] and 10 [4] of the civil practice and remedies code, seeking, among other relief, payment by Henry of a monetary penalty into the court. The plaintiffs filed a pro se notice of nonsuit on June 10, 2002. On July 2, 2002, the trial court signed an order of nonsuit.[5] The sanctions proceedings continued.

After notice to the parties, the trial court held a hearing on July 30, 2002 based on the two sanction motions filed by the Doctors. Henry appeared at the hearing by counsel only. The trial court took judicial notice of the pleadings and other papers in the file. The Doctors testified that they did not prescribe or administer the drug Propulsid to the deceased. Over multiple objections, two other doctors testified that Henry had asserted claims against them that had no reasonable basis or that he asserted virtually identical claims. On July 31, 2002, the trial court signed an order granting the Doctors' motions for sanctions and ordered payment

by Henry of $50,000 into the registry of the court. The fine consisted of $25,000 for each of the Doctors' motions. On August 2, 2002, the trial court signed findings of fact and conclusions of law regarding its imposition of sanctions as well as a revised order incorporating its findings and conclusions. Henry filed post-sanction motions to modify, vacate, or reform the order and a motion for new trial. The trial court heard Henry's post-sanction motions on October 15, 2002. Henry appeared and testified during the hearing. The trial court denied the motions. This appeal ensued.

## II. JURISDICTION

The Doctors filed their sanction motions before the plaintiffs nonsuited their claims. Thus, the trial court had continuing jurisdiction to hear and determine the sanction motions after the nonsuit. TEX.R. CIV. P. 162; *In re Bennett*, 960 S.W.2d 35, 38 (Tex.1997).

## III. STANDARDS

### A. Presumptions and Burdens of Proof in Sanctions Motions

Generally, courts presume that pleadings and other papers are filed in good faith. *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993) (orig.proceeding).[6] In determining if sanctions are proper, the trial court must examine the circumstances existing when

---

**2.** TEX.R. CIV. P. 13.

**3.** TEX. CIV. PRAC. & REM.CODE ANN. §§ 9.00–.014 (Vernon 2002).

**4.** TEX. CIV. PRAC. & REM.CODE ANN. §§ 10.001–.005 (Vernon 2002).

**5.** While the parties do not dispute that Henry assisted the preparation of the nonsuit papers for filing by the Woods pro se after his formal withdrawal from the case, the trial court aptly

found that the pro se plaintiff, not Henry, filed the nonsuit.

**6.** We do not specifically address the application *vel non* of good faith to chapter 10 sanctions. In an unpublished opinion, the San Antonio court addresses this concern. *See Griffin Indus. v. Grimes*, No. 04–02–00430–CV, 2003 WL 1911993, * 4 (San Antonio Apr. 23, 2003, no pet.) (applying good faith to chapter 10).

the litigant filed the pleading. *Home Owners Funding Corp. of Am. v. Scheppler,* 815 S.W.2d 884, 889 (Tex.App.-Corpus Christi 1991, no writ) (applying presumption of good faith to rule 13 sanction). The trial court considers the acts or omissions of the represented party or counsel, not merely the legal merit of a pleading or motion. *Griffin Indus. v. Grimes,* No. 04–02–00430–CV, 2003 WL 1911993, * 4, (San Antonio Apr. 23, 2003, no pet.); *N.Y. Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 205 (Tex. App.-Dallas 1993, no writ). The party seeking sanctions bears the burden of overcoming the presumption of good faith in the filing of pleadings. *Tanner,* 856 S.W.2d at 731.

## B. Standard of Review

 A trial court's imposition of sanctions is reviewed under an abuse of discretion standard. *In re Bennett,* 960 S.W.2d at 40; *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 853 (Tex.1992); *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990); *Rudisell v. Paquette,* 89 S.W.3d 233, 236 (Tex.App.-Corpus Christi 2002, no pet.). Under an abuse of discretion standard, the appellate court reviews the entire record to determine if the trial court acted arbitrarily and unreasonably and thus abused its discretion. *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 444 (Tex.1997). We may not substitute our judgment for that of the trial court. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). The test for determining whether the trial court abused its discretion is whether it acted without reference to any guiding rules and principles to the extent the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Alejandro v. Bell,*

84 S.W.3d 383, 392 (Tex.App.-Corpus Christi 2002, no pet.). A trial court abuses its discretion in imposing sanctions if it bases its order on an incorrect view of the law or an erroneous assessment of the evidence. *Randolph v. Jackson Walker, L.L.P.,* 29 S.W.3d 271, 276 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

## IV. ANALYSIS

### The Trial Court's Discretion to Sanction under Chapter 10

Henry's first issue asserts that the trial court abused its discretion in imposing sanctions. More specifically, Henry argues: (1) chapter 10's stringent requirements do not apply to alternative pleadings; (2) that the trial court should not have based its decision solely on one allegation when alternatives existed; (3) that the trial court should have allowed evidence of alternative complaints; (4) there was no evidence of Henry's intent; (5) the trial court erred in basing sanctions on other grounds not pled; (6) the trial court erred in basing chapter 10 sanctions on findings under rule 13 and chapter 9; and (7) the trial court erred by failing to comply with the findings requirements of chapter 10. We will only address Henry's sub issues one, two, five, and seven. *See* Tex.R.App. P. 47.1.

 The trial court in its order for sanctions stated that sanctions were warranted "pursuant to § 10.004(b)."[7] The order also recited that the sanction of $25,000 per sanction motion should be paid "as a penalty into the Court pursuant to § 10.004(c)(2)."[8] The order invokes only chapter 10 when ordering sanctions and orders those sanctions paid into the court, a remedy available only under chapter 10.

---

7. Tex. Civ. Prac. & Rem.Code Ann. § 10.004(b) (Vernon 2002).

8. Tex. Civ. Prac. & Rem.Code Ann. § 10.004(c)(2) (Vernon 2002).

*See Sterling v. Alexander,* 99 S.W.3d 793, 799–800 (Tex.App.-Houston [14th Dist.] 2003, no pet.). When an order of sanctions refers to one specific rule, either by citing the rule, tracking its language or both, we are confined to determining whether sanctions are appropriate under that particular rule. *Finlay v. Olive,* 77 S.W.3d 520, 524 (Tex.App.-Houston [1st. Dist.] 2002, no pet.). Thus, we review the order for abuse of discretion only under chapter 10 and not under rule 13 of the rules of civil procedure or chapter 9 of the civil practice and remedies code.

Section 10.001 of chapter 10 provides:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

 (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

 (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

 (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

 (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specif-ically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM.CODE ANN. § 10.001 (Vernon 2002). A court may punish violations of chapter 10 by imposing sanctions on the "person, [the] party represented by the person, or both" who "has signed [the] pleading or motion in violation of Section 10.001." TEX. CIV. PRAC. & REM.CODE ANN. § 10.004(a) (Vernon 2002).

In his first two sub-issues, Henry complains the trial court abused its discretion in concluding that sanctions lie for a pleading that asserts alternative claims even though there is no identification of the particular defendants to which each claim applies. The trial court should not sanction for an alternative pleading while ignoring other applicable alternatives. In the petition he drafted and signed, multiple allegations were made against four drug manufacturers, a hospital, a nurse, and eight physicians. Under strict liability, the petition alleged ten claims against the drug manufacturers. Twenty-five negligence allegations were also made against these corporate defendants, plus four per se negligence allegations. The compound, complex pleading also averred misrepresentation, fraud and warranty violations. A separate section of the petition delineated the alleged negligence of a nurse, physicians and the hospital. This separate section, against ten different individual defendants was the genesis of the sanction proceedings.

Sixteen separate allegations were made. Many of the allegations dealt directly or indirectly with the drug Propulsid,[9] its prescription, failure to warn, advise, treat and properly monitor the deceased. The last five allegations alternatively dealt with improper diagnosis, monitoring and treat-

---

**9.** Propulsid was withdrawn from the market in 2000.

ment. Unlike the allegations against the drug manufacturers, allegations against the hospital, nurse, and physicians were in the alternative.[10]

The pleading specifically stated: "[T]hey were negligent during the course of treatment given to Plaintiff Henry White in one or more of the following particulars...."

The face of the pleading clearly did not implicate every physician, the nurse, or hospital in every allegation. Nor did the pleading allege the Doctors committed any particular act.

The Doctors' motions for sanctions drew careful aim only at the allegations that they prescribed Propulsid. "This Defendant is accused of negligence in connection with an assertion that he prescribed the drug Propulsid to the decedent, Henry White. In truth and in fact, this Defendant never prescribed or provided Propulsid for Mr. White." Both Doctors attached affidavits stating they did not prescribe the drug and their hearing testimony echoed this complaint. The sanction motions continued: "The medical records ... contain no references to either physician [having] prescribed or approved Propulsid for the decedent." Because both Doctors only treated the deceased at the hospital where he died, there seems to be little doubt the Doctors were not involved in the allegations dealing with the prescription of Propulsid, failure to warn, advise, treat and properly monitor the deceased before admission to the hospital. Rather the proof showed their treatment of the deceased was after his stroke and hospitalization.

At the hearing, the trial court rejected as irrelevant most of Henry's attempts to cross examine or adduce evidence concerning material allegations of negligent treatment in the hospital leading to the death of Henry White. Thus, the $50,000 sanction was based upon only select allegations, involving a drug the Doctors did not prescribe. The trial court clearly rejected Henry's argument concerning alternative pleadings. Yet there was no proof of which alternative allegations were directed at the Doctors.

Henry argues the petition did not specifically accuse the two Doctors of prescribing the drug. Instead, alternative acts of negligence against several physicians were made. Henry also argues the Doctors even filed special exceptions claiming the pleadings were vague, ambiguous, and unclear. Henry argues the proper remedy for a pleading lacking specificity is special exceptions. See TEX.R. CIV. P. 91; see also Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex.2000) (an opposing party should use special exceptions to identify defects in pleading so that they may be cured). We agree.

■ The Doctors counter that Henry's conduct was nevertheless sanctionable because chapter 10 provides "each allegation or other factual contention in the pleading or motion has evidentiary support, or for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." TEX. CIV. PRAC. & REM.CODE ANN. § 10.001(3) (Vernon 2002). Chapter 10's language is facially stronger than the language of Federal Rule 11(b), which requires "the allegations or other factual contentions" have or will likely have evidentiary support. See FED.R.CIV.P. 11(b)(3). The Seventh Cir-

10. Because the pleading asserted sixteen varied allegations against nine individuals plus the hospital, this created a matrix of one hundred and sixty combinations. Stated otherwise, that the pleading actually accused one of the Doctors with prescribing Propulsid, was a one in one hundred sixty possibility.

cuit has ruled that rule 11 applies to all statements and each claim must have sufficient support; each must be investigated and researched before filing. *Frantz v. United States Powerlifting Fed.*, 836 F.2d 1063, 1067 (7th Cir.1987). Indeed, the case states that "Each claim must have sufficient support; each must be investigated and researched before filing." *Id.* at 1067. Our reading of chapter 10 agrees with this analysis. However, *Frantz* deals with an alleged conspiracy against only three actors, all of whom allegedly would have been legally responsible for each alleged act. *See id.* at 1064. A materially different scenario exists where alternative allegations are pled against multiple independent actors. The Fifth Circuit, the Doctors argue, has also rejected the argument "that one cannot sanction a party for a pleading that contains frivolous claims if it also contains nonfrivolous claims." *Bay State Towing Co. v. Barge Am. 21*, 899 F.2d 129, 133 (1st Cir.1990). Rule 11 sanctions cannot be escaped with respect to a document that is basically false or misleading or inadequately supported. *Id.* We agree. However, *Bay State Towing* is a two-party case, without alternative claims. *Id.* Here, the Doctors only complained and only offered proof that some or only one of the alternative allegations did not apply to them.[11] They neither contended nor proved that the allegations surrounding the prescription of the unsafe drug Propulsid were frivolous, unsupported, not investigated or not researched. To the contrary, the Doctors totally divorced and distanced themselves from these allegations. At the time the petition was filed, there were a significant number of cases pending throughout the country con-

cerning Propulsid. All of the federal cases have been or are being transferred by the Judicial Panel on Multidistrict Litigation ("JPMDL") to the Propulsid Multidistrict Litigation ("MDL"), currently pending in the Eastern District of Louisiana. *See, e.g., In re Propulsid Prods. Liab. Litig.*, MDL No. 1355, 2003 WL 22383576 (E.D.La Oct. 16, 2003). The Doctors only complained that the allegations regarding the prescription of Propulsid did not apply to them. In short, the Doctors did not contend or prove either that Propulsid was safe or that the alternative allegations concerning their hospital treatment were sanctionable. In the first instance, they failed to show which of the sixteen allegations applied to them.

The rules of civil procedure recite a myriad of circumstances allowing the joinder of parties and claims. For example, persons may be joined that are needed for a just resolution. TEX.R. CIV. P. 39. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, *or in the alternative*, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. TEX.R. CIV. P. 40 (emphasis added).

A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them · if made independently would be sufficient, the pleading is not

---

11. The Doctors pointed the trial judge to page fifteen of Plaintiff's Original Petition; there most of the allegations not pertaining to the aftercare are listed. Only on appeal, do they now also point to another portion of the

pleading, not presented or argued to the trial court. We base our decision on the motion, hearing, and evidence presented below, not new-found theories not argued or presented to the trial court.

made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds or both.

Tex.R. Civ. P. 48.

Thus, relief in the alternative or of several different types is patently authorized. Where there are several counts in the petition and entire damages are given, the verdict or judgment shall be good notwithstanding the fact that one or more counts may be defective. Tex.R. Civ. P. 49.

"Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." Tex.R. Civ. P. 50(a).

The plaintiff in his petition or in a reply setting forth a counterclaim and the defendant in an answer setting forth a counterclaim may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party. There may be a like joinder of claims when there are multiple parties if the requirements of Rules 39, 40, and 43 are satisfied.

Tex.R. Civ. P. 51(a).

We can only conclude our rules expressly permit parties to proceed on alternative theories of relief. *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 278 (Tex.1996); *see* Tex.R. Civ. P. 48.

Chapter 10's stringent pleading requirements must be viewed not in a vacuum,

but in the correspondingly liberal pleading allowances of the rules of procedure. By the black letter of the rules, Henry was allowed to join multiple parties and claims. Tex.R. Civ. P. 48 & 40. Chapter 10 requires each allegation or other factual contention in the pleading or motion to have evidentiary support. Tex. Civ. Prac. & Rem. Code Ann. § 10.001(3) (Vernon 2002). However, we do not read chapter 10 to require that a claim or defense against one party also apply to all other parties. An alternative claim against a nurse need not apply against a physician. Nor does chapter 10 require that the evidentiary support against one party also be evidence against another party. Evidence against one physician need not support a claim against another physician.[12] Rather, the plain meaning of chapter 10, in the context of the rules of civil procedure, means each allegation or other factual contention has evidentiary support as it pertains to the claim or defense made on behalf of, or against, one of the multiple parties. *See id.; see also* Tex.R. Civ. P. 48, 40. We sustain Henry's first two sub-issues.

■ Henry also argues that due process requires notice before other unrelated litigation can be considered as a basis for sanctions. The trial court, in its finding number fifteen, specifically noted that Henry "consistently" engaged in a similar pattern. Yet, no notice was given to Henry that other allegations were an intended basis of sanctions.

The Doctors argue that the trial court was entitled to consider "other wrongs or acts" as evidence of motive and intent. They cite *Falk & Mayfield L.L.P. v. Molzan,* 974 S.W.2d 821, 824 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). *Mol-*

---

12. We also agree that each claim must have sufficient support; each must be investigated and researched before filing. *See Frantz v.*

*United States Powerlifting Fed.,* 836 F.2d 1063, 1067 (7th Cir.1987).

*zan* is not a chapter 10 case. *See id.* Rather it deals with rule 13, and mentions that evidence of two other suits helped establish the required element of bad faith. *Id.* There was no contention concerning lack of notice, as here. The Doctors further argue Henry was not entitled to greater notice than he received, citing *Sterling v. Alexander,* 99 S.W.3d 793, 798 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). According to *Sterling,* "So long as the due process requirement of notice and hearing are satisfied, the only requirement of the motion contained in chapter 10 is that it must '[describe] the specific conduct violating Section 10.001.' " *See id.* This is the very point Henry makes. Henry had notice of a hearing and counsel attended. However, there was neither pleading nor notice that the Doctors would urge other specific conduct as a basis for sanctions. And the trial court's findings reflect that it used the unnoticed conduct as a basis for the sanctions.

■ The power to sanction is of course limited by the due process clause of the United States Constitution. *See* U.S. CONST. amend. XIV; *see* TEX. CONST. art. I, § 19 (due course of law); TEX. CIV. PRAC. & REM.CODE ANN. § 10.003 (Vernon 2002) (notice of allegations and reasonable opportunity to respond required); *In re Bennett,* 960 S.W.2d at 40. Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp.,* 34 S.W.3d at 896. In *Burnett v. James,* 564 S.W.2d 407, 409 (Tex.Civ.App.-Dallas 1978, writ dism'd), the court observed that the general rule is that a prayer for *general relief* will authorize judgment for any relief a trial court has jurisdiction to grant so long as the judgment is supported by the allegations and

proof and is consistent with the theory of recovery stated in the pleadings. *Id.* (citing *Jennings v. Tex. Farm Mortgage Co.,* 124 Tex. 593, 80 S.W.2d 931 (1935); *Seureau v. Mudd,* 515 S.W.2d 746 (Tex.Civ. App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.)). Here, no general relief was requested.

Furthermore, in certain instances, the type of relief requested must be specifically prayed for, or the trial court cannot grant it. *Id.* (rescission is one of these instances); *see also Green Tree Acceptance, Inc. v. Pierce,* 768 S.W.2d 416, 421 (Tex.App.-Tyler 1989, no writ). Because the applicable code requires a motion for sanctions thereunder to describe the specific conduct *violating section 10.001,* we hold that the Doctors' pleadings do not support any sanctions under chapter 10 for unrelated and unnoticed prior litigation. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 10.002 (Vernon 2002); *Davila v. World Car Five Star,* 75 S.W.3d 537, 542–43 (Tex. App.-San Antonio 2002, no pet.) (under pleadings, sole grounds for sanctions at trial was section 17.50; other post-trial sanctions under rule 13 and chapter 10 not considered by the trial court); *see also Metzger v. Sebek,* 892 S.W.2d 20, 51 (Tex. App.-Houston [1st Dist.] 1994, writ denied) (where sanctions order refers to one specific rule, review limited to that rule).

We further observe, although not specifically argued by Henry, that both Doctors began their preamble of virtually identical motions for sanctions, stating they were filing the motions under rule 13, chapter 9 of the Texas Civil Practice and Remedies Code and chapter 10. However, their requested relief under identical paragraphs VIII, unequivocally stated: "This Defendant respectfully move[s] the Court, pursuant to Chapters 9 and 11 of the Texas Civil Practices & Remedies Code, to enter an order as follows...." The paragraph

then asks that pleadings be stricken, and for an order dismissing claims, and requiring Henry to pay expenses and attorneys fees and a monetary penalty into the court. The prayer asked the court to grant the motion "and that the Court award the relief requested hereinabove in its entirety." There was no prayer for general relief, and the only relief requested was under Chapters 9 and 11. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 9.001–.014, 10.001–.006 (Vernon 2002). We sustain Henry's issue regarding lack of notice and pleadings that unrelated lawsuits would be urged and used as a basis for sanctions.

■ Next, we address Henry's argument that the trial court did not include any specific findings that would justify a chapter 10 sanction. Chapter 10 mandates the trial court shall describe both the conduct and basis for its sanctions. Tex. Civ. Prac. & Rem.Code Ann. § 10.005 (Vernon 2002). The use of the word "shall" in the statute indicates that the requirement for particularity in the sanction order is mandatory. *Univ. of Tex. at Arlington v. Bishop,* 997 S.W.2d 350, 355 (Tex.App.-Fort Worth 1999, pet. denied). Aside from setting out the procedural history of the case and various statutory language, one conclusory finding is offered as support for the sanctions. That finding merely tracks the statutory language of chapter 10. Finding of fact 13 states:

> [E]ach and all the allegations brought against Drs. Low and Smith and therefore the lawsuit brought against these physicians, did not, on January 31, 2002, and do not now, have evidentiary support; nor were they on January 31, 2002 likely to have evidentiary support after a reasonable opportunity for further in-

vestigation or discovery in contravention of the requirements of chapter 10 of the Texas Civil Practice and Remedies Code.

First, we are constrained to note the vast over-reach by the drafter of this finding, which we assume to be the Doctors' counsel. The trial court excluded cross-examination concerning the allegations against the Doctors contained in Henry's original petition, save and except those narrowly dealing with the drug Propulsid.[13] Thus, at the outset, this finding is patently unsupportable and erroneous.

Secondly, and to this point, the finding is no more than a general conclusory statement. In sum, the finding could just as well say, Henry had no evidence and could not reasonably expect to discover any evidence. Evidence of or pertaining to what? The doctors were at the hospital and were charged with the responsibility of diagnosing and treating a man suffering from a stroke. They allegedly failed to meet their responsibilities in diagnosing the cardiac condition caused by the drug, failed to properly read and interpret the ECGs, failed to administer proper treatment, failed to follow up on ordered tests, and the pro se widow's husband died. The medical records are conspicuous by their absence from the record. Henry ordered the hospital and doctors' records, presumably for review, but neither the trial court nor the appellate court are afforded this critical evidence. Under the finding, no specific conduct is delineated. The finding fails to explain the basis for the significant sanction imposed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 10.005 (Vernon 2002).

---

13. We would also note Henry may well have been deprived of a meaningful hearing, because his counsel was not allowed cross-examination of the complaining doctors con-

cerning most of the pleading's allegations against the doctors. *Davila v. World Car Five Star,* 75 S.W.3d 537, 544 (Tex.App.-San Antonio 2002, no pet.)

By analogy, rule 13 imposes a duty on the trial court to point out with particularity the acts or omissions on which sanctions are based. *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 895 (Tex. App.-Houston [14th Dist.] 2000, no pet.). The requirement that the trial court state the particulars of the good cause for imposing sanctions is mandatory. *Id.* (citing *GTE Communications Sys. Corp. v. Curry*, 819 S.W.2d 652, 654 (Tex.App.-San Antonio 1991, no writ)). A mere statement in the order that good cause was shown is insufficient to sustain a sanctions order. *Id.* Sanctions must be based on the acts or omissions of the represented party or counsel-not merely on the legal merit of the pleading. *Zarsky v. Zurich Mgmt.*, 829 S.W.2d 398, 400 (Tex.App.-Houston [14th Dist.] 1992, no writ) (the trial court's finding that "the Court finds substantial evidence that this Third Party lawsuit ... was frivolous and of no merit" to be insufficient and harmful in the context of rule 13). We see no difference between a finding that says there was no evidence and its reciprocal, that there is substantial evidence the lawsuit was frivolous. We hold that the findings of the trial court fail to meet the mandatory statutory requirements of chapter 10. TEX. CIV. PRAC. & REM.CODE ANN. § 10.005 (Vernon 2002) (court shall describe conduct the court determined violative and explain the basis for the sanction imposed); *Rudisell v. Paquette*, 89 S.W.3d 233, 238 (Tex.App.-Corpus Christi 2002, no pet.) (in imposing sanctions, trial court is mandated to specifically detail the sanctionable conduct in its order). We sustain Henry's issue regarding the lack of specificity in the findings below.

The harm to Henry is patent. The primary basis of the large monetary sanction was that alternative allegations were not shown to apply to the Doctors. The additional basis for the sanction relied upon allegations that were not noticed or pled. Nor is the basis of the sanctions detailed or explained. We can only conclude that Henry suffered harm in the form of a $50,000 sanction award. TEX.R.APP. P. 44.1(a)(1), (2).

Because of our disposition, a discussion of the magnitude of the sanctions and other sub-issues are not necessary to the disposition of this appeal. TEX.R.APP. P. 47.1

We conclude that the trial court acted outside the guiding rules and principles in determining Henry's representation warranted sanctions pursuant to chapter 10. *See Downer*, 701 S.W.2d at 241–242. Specifically, (1) chapter 10's stringent requirements do not apply to alternative pleadings in the context presented; TEX.R. CIV. P. 40, 48; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 10.003; (2) specific conduct alleged to violate Section 10.001 must be supported by notice of the allegations; TEX. CIV. PRAC. & REM.CODE ANN. § 10.003; and (3) the trial court must specifically detail the sanctionable conduct in its order and explain the basis for the sanction imposed. TEX. CIV. PRAC. & REM.CODE ANN. § 10.005; *Rudisell*, 89 S.W.3d at 238.

Accordingly, we reverse and render the trial court's sanction order. TEX.R.APP. P. 43.2(c).

Dissenting Opinion by Justice CASTILLO, joined by Justice RODRIGUEZ.

Dissenting Opinion by Justice CASTILLO.

I respectfully dissent. The majority reverses the trial court's imposition of sanctions on three grounds: (1) Henry did not receive notice that the Doctors sought sanctions under chapter 10 of the civil

practice and remedies code;[1] (2) the sanctions order did not detail the sanctionable conduct or explain the basis for the sanction; and (3) Henry's alternative pleading allegations did not violate chapter 10. I would conclude that Henry first substitutes arguments on appeal for those he did not preserve below, then urges us to substitute our judgment for the trial court's. I would defer to the trial court's discretion.

## I. PRESERVATION OF ERROR

### A. Procedural Background

In September of 2001, Henry requested copies of medical records relevant to this suit. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 4.01(d) (Vernon Supp.2003) (since repealed). He also sent a notice letter, which extended the two-year statute of limitation for filing the suit to February 5, 2002. *See id.*, § 4.01(a), (c). He filed suit against the Doctors, among others, on January 31, 2002.

Also on January 31, 2002, Henry filed a motion to withdraw, stating as good cause for the withdrawal "that a conflict of interest has arisen which prevents the Law Offices of Thomas J. Henry from continuing representation of any of the Plaintiff's [sic] in this case." On April 24, 2002, the trial court notified Henry that his motion to withdraw was set on May 6, 2002. Henry filed a motion for appointment of an agent for service under rule 103 on April 29, 2002. *See* Tex.R. Civ. P. 103. That same day, he requested issuance of citation on all of the defendants. The trial court granted the rule 103 motion by order signed April 30, 2002.

On May 6, 2002, the trial court heard Henry's motion to withdraw. Henry was not present. The plaintiff appeared and stated she had no objection to Henry's withdrawal. She told the judge she intended to hire another lawyer. The trial court signed an order granting Henry's motion to withdraw that same day.

The Doctors appeared and answered. On May 28, 2002, they filed the motions for sanctions that are the subject of this appeal. Neither the plaintiff nor Henry filed a written response to the sanctions motions.

On June 10, 2002, Henry prepared, transmitted to the court under the law firm's letterhead, and filed a notice of non-suit, signed by the plaintiff pro se. On July 2, 2002, the trial court signed an order of nonsuit.

The sanctions proceedings continued. After notice to the parties, the trial court held a sanctions hearing on July 30, 2002. Henry appeared at the hearing by counsel but not in person.

### B. Pre–Sanction Preservation of Error of the Notice Issue

On appeal, Henry complains he did not have notice that the Doctors sought sanctions under chapter 10 of the civil practice and remedies code. He argues that the sanctions motions requested relief only under rule 13[2] and chapters 9[3] and 11,[4] citing paragraphs VII and VIII of each motion, which referred only to rule 13 and chapters 9 and 11. As a consequence, Henry maintains in a sub-issue of his challenge to the trial court's exercise of discretion in sanctioning him, the trial court

---

1. Tex. Civ. Prac. & Rem.Code Ann. §§ 10.001–.005 (Vernon 2002).

2. Tex.R. Civ. P. 13.

3. Tex. Civ. Prac. & Rem.Code Ann. §§ 9.00–.014 (Vernon 2002).

4. Tex. Civ. Prac. & Rem.Code Ann. §§ 11.001–.104 (Vernon 2002).

abused its discretion in basing its sanctions order on evidence of Henry's filing of other lawsuits. I would overrule this sub-issue for two reasons: (1) Henry had actual notice the Doctors sought sanctions under chapter 10; and (2) Henry waived his objection to lack of notice under chapter 10 by not objecting on that basis before, during, or after the sanctions hearing.

### 1. Actual Notice

The introductory paragraphs of both motions stated that the motions were filed pursuant to rule 13 and chapters 9 and 10. Also, the motions seek, among other requested relief, "An Order that Plaintiffs and/or Plaintiffs' former counsel, Thomas J. Henry, pay a monetary penalty into the Court as the Court deems appropriate to punish them for this egregious conduct and to deter them from similar conduct in the future." Payment of a monetary penalty into the registry of the court is a sanction available only under chapter 10. *See Sterling v. Alexander*, 99 S.W.3d 793, 799–800 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). I would find that Henry had actual notice the Doctors pursued sanctions under chapter 10. Further, chapter 10 allows imposition of a sanction to deter repetition of the sanctioned conduct. Tex. Civ. Prac. & Rem.Code Ann. § 10.004(b) (Vernon 2002). I would find that evidence of similar conduct in other cases is relevant to the trial court's assessment of an appropriate sanction under chapter 10. *See* Tex.R. Evid. 401, 402, and 405. Accordingly, I would hold that Henry's actual notice that the Doctors sought sanctions under chapter 10 also put him on actual notice that the Doctors could introduce evidence of his conduct in similar lawsuits. *See Sterling*, 99 S.W.3d at 797.

Moreover, even assuming, arguendo, that the Doctors' sanctions motions did not provide actual notice to Henry that they intended to seek sanctions under chapter 10, Henry's counsel did not object to the lack of notice before, during, or after the sanctions hearing. He had repeated opportunities to do so.

### 2. Waiver of Notice

Before the sanctions hearing started, the trial court discussed with the attorneys how long each side would need to present their case:

THE COURT: All right. And it's your motion, [Doctors' Counsel]?

[DOCTORS' COUNSEL]: It is, yes, sir.

THE COURT: Counsel?

[HENRY'S COUNSEL]: [Henry's Counsel] for one of the Respondents, the Law Offices of Thomas J. Henry.

THE COURT: All right.

And you're estimating an hour and a half or two hours, [Doctors' Counsel]?

[DOCTORS' COUNSEL]: I am, Your Honor.

THE COURT: Mr.-[Henry's Counsel], what is your estimate?

[HENRY'S COUNSEL]: My estimate is five to ten minutes.

THE COURT: Okay.

[DOCTORS' COUNSEL]: Your Honor, the reason for the disparity, obviously, is that I have quite a bit of evidence that I believe is relevant and available for the Court, and that is the reason for the row of individuals seated behind me. And I think that under both Rules 9 and 10 of the Civil Practice and Remedies Code evidence on this issue is pertinent.

So, in-in light of that, Your Honor, I'm announcing an hour and a half to two hours.

Henry's counsel did not object that Henry did not have notice that the Doctors sought sanctions under chapter 10. The

Doctors' counsel raised chapter 10 a second time:

> THE COURT: All right. Did you ask for some sort of relief against the Plaintiff individually and in her representative capacity, [Doctors' Counsel]?
>
> [DOCTORS' COUNSEL]: Your Honor, I think the motion is couched in terms of asking for sanctions against the law firm of Thomas J. Henry and/or Mrs. White. I will tell you that I have no intention of asking this Court to impose sanctions against Mrs. White, because my arguments in my complaint deal with the actual filing of the suit at a time when she was represented.
>
> And Rule 10 of the Texas Civil Practices and Remedies Code specifically states that sanctions may not be awarded against a represented party under that provision....

Henry's counsel again did not object that Henry did not have notice that the Doctors sought sanctions under chapter 10. After the close of evidence, the trial court heard the arguments of counsel. The Doctors' counsel argued:

> [DOCTORS' COUNSEL]: Now, I think that under Chapter 10 of the Civil Practices and Remedies Code wherein it states that the Court can enter a sanction to deter similar conduct and—and by that, require that the offending party pay a penalty into the Court, that it must be a determination that the pleading in White was groundless. It must be followed by a meaningful sanction. And given the wealth of the Thomas J. Henry law firm, as evidenced by the advertising effort that they have put in over the years, including the erection of a wall right outside Driscoll Hospital alerting patients and parents that they take C.P. cases, cerebral palsy—

> [HENRY'S COUNSEL]: Your Honor, I'm going to object. He's arguing all kinds of facts that he never put in evidence.
>
> THE COURT: Sustained.

Once again, Henry's counsel did not object that Henry did not have notice that the Doctors sought sanctions under chapter 10. The Doctors' counsel then asked the court for relief available only under chapter 10:

> [DOCTORS' COUNSEL]: I would respectfully ask this Court to enter a sanction in this case of $100,000.00 against the Thomas J. Henry law firm. I would ask the Court to Order that they pay that as a penalty into the court, to serve as a deterrent to that law firm and others similar-similarly-situated or so inclined to engage in similar conduct....

Henry's counsel responded:

> [HENRY'S COUNSEL]: Your Honor, I'll be brief. This hearing has spun into something that I'm sure it didn't begin to be. This is a case for sanctions under Rule 9 and Rule 13. There is a very high standard that Doctors' counsel has to go and prove in order to merit those sanctions. The burden is on Mr. Oncken to prove that these-in this particular lawsuit, these two defendants were sued baselessly and groundlessly....

Henry's counsel did not object, however, that Henry had no notice under chapter 10 that Henry's conduct in other lawsuits would be at issue in the sanctions hearing. The Doctors' counsel countered:

> [DOCTORS' COUNSEL]: Both Chapter 9 and Chapter 10 of the Civil Practice and Remedies Code specifically state that the signing of a pleading constitutes a certificate by the signatory that to the signatory's best

knowledge, information, and belief, formed after reasonable inquiry, the pleading is not groundless and brought in bad faith....

Yet again, Henry's counsel did not object that Henry did not have notice that the Doctors sought sanctions under chapter 10. The Doctors' counsel continued:

> [DOCTORS' COUNSEL]: Mr. Henry signed the pleading. Mrs. White came to the Henry firm for legal advice. That's why Chapter 10 says you can't seek sanctions for filing a groundless pleading against a party when they're represented by counsel. It's because they're not lawyers. They depend on and rely upon the advice, the instruction, and the actions of their attorneys. Both Chapter 9 and Chapter 10 of the Civil Practice and Remedies Code specifically state that the signing of a pleading constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry, the pleading is not groundless and brought in bad faith....

For the fifth time, Henry's counsel did not object to any lack of notice under chapter 10. Finally, Henry's counsel did not object when the trial court pronounced, from the bench after the hearing, a sanction that was available only under chapter 10. A party waives the right to object to a lack of notice by participating in a hearing without notifying the court of its objection on notice grounds. *See* Tex. R.App. P. 33.1; *see also Manning v. North,* 82 S.W.3d 706, 714 (Tex.App.-Amarillo 2002, no pet.) (dismissal hearing); *Wyatt v. Furr's Supermarkets, Inc.,* 908 S.W.2d 266, 270 (Tex.App.-El Paso 1995, writ denied) (summary-judgment hearing). Henry did not complain before, during, or after the sanctions hearing that he had no notice

the Doctors would proceed under chapter 10. *See Negrini v. Beale,* 822 S.W.2d 822, 824 (Tex.App.-Houston [14th Dist.] 1992, no writ) (summary-judgment hearing). He did not seek a recess or continuance when it became apparent from the Doctors' arguments and presentation of witnesses that his conduct in other lawsuits was at issue. *See id.* at 823–24. Henry "not only failed to object, but appeared, did not request a continuance, and fully participated in the hearing." *See Powers v. Palacios,* 771 S.W.2d 716, 718 (Tex.App.-Corpus Christi 1989, writ denied). On this record, I would find that Henry waived his objection that he had no notice that the Doctors sought sanctions under chapter 10 as well as under rule 13 and chapters 9 and 11. *See id.*

Further, when the Doctors called Dr. Robert Mastin, one of the witnesses about whose testimony Henry now complains, Henry's counsel objected as follows:

> [HENRY'S COUNSEL]: Your Honor, we'd object to this witness. He's not a party to this case and has never been a party to this case. I'm not sure what relevance any testimony that he has has to do with the issues of whether or not a baseless lawsuit was filed in this case.
>
> [DOCTORS' COUNSEL]: Response, Your Honor?
>
> THE COURT: No. Overruled.

Dr. Mastin then testified without further objection until the Doctors offered a copy of a petition and citation in another lawsuit filed by Henry against Dr. Mastin. Henry's counsel objected to the exhibit on relevancy grounds:

> THE COURT: Objection?
>
> [HENRY'S COUNSEL]: Same objection, Your Honor, as to relevance.
>
> THE COURT: Overruled. Admitted over objection.

Dr. Mastin then testified, without objection, to the particulars of that lawsuit. He said he had never treated the patient involved. He also said he had compared the allegations in that petition with the allegations in the petition Henry filed in this case, and they were "word-for-word" identical except for the names of the parties. Also without objection, Dr. Mastin then testified to the contents of a notice letter sent by Henry to Dr. Mastin in a second case. Henry's counsel did not object until the Doctors' counsel offered the notice letter itself into evidence. At that point, Henry's counsel asked for a running objection:

[HENRY'S COUNSEL]: Running objection as to relevance, Your Honor.

THE COURT: I'll overrule it. You can reassert it later if they're not—

[DOCTORS' COUNSEL]: I'll tender Exhibit 9 to the Court, Your Honor, and ask that it be admitted.

THE COURT: Exhibit 9 is admitted over objection.

Dr. Mastin then testified, without objection, that after sending the notice letter, Henry filed suit on the claim against the other doctors in his practice group and him. He said that two of the other doctors were not members of the practice group at the time the patient was treated.

Also without objection, Dr. Mastin went on to testify that Henry withdrew from representing the plaintiffs in both of the other two cases, just as he had in this case. The trial court sustained Henry's counsel's objection on authenticity grounds to a Nueces County District Clerk docket sheet. However, by the time Henry's counsel had objected, Dr. Mastin had already testified about the information contained on the docket sheet: Henry had withdrawn from the second case, and it had been dismissed.

The Doctors' counsel then called Dr. Christine Canterbury. Henry's counsel again asked for a running objection:

[HENRY'S COUNSEL]: Your Honor, if this is going to be cumulative, I have a running objection as to relevance. Dr. Canterbury didn't have anything to do with the White case.

THE COURT: Would you like to stipulate as to what her testimony might be?

[HENRY'S COUNSEL]: I have no idea what her testimony is going to be, Your Honor.

THE COURT: Fine. Call your witness.

Dr. Canterbury then confirmed Dr. Mastin's testimony, without objection, that another doctor and she had been sued by Henry even though they were not members of the practice group at the time the patient was treated. The Doctors then sought to introduce a notice letter in a third suit. Henry's counsel objected:

THE COURT: Objection?

[HENRY'S COUNSEL]: No objection, Your Honor, except for relevance.

THE COURT: Overruled. Admitted over objection.

Dr. Canterbury then testified, without objection, that she had not treated the patients named in the notice letter. When the Doctors offered a letter from Henry that withdrew the notice letter, Henry's counsel had no objection:

[DOCTORS' COUNSEL]: Offer Exhibit 12, Your Honor.

[HENRY'S COUNSEL]: No objections, Your Honor.

THE COURT: Admitted.

A party should object every time inadmissible evidence is offered. *Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348, 368 (Tex.App.-Corpus Christi 2003, pet. filed) (en banc). If a party objects to certain

evidence but later does not object when the same evidence is introduced, the party waives its objection. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984). Henry's counsel attempted a running objection, an exception to the general rule that a party must continue to object and get a ruling for each individual instance of inadmissible testimony. *See In re A.P.*, 42 S.W.3d 248, 260–61 (Tex.App.-Waco 2001, no pet.). However, the trial court overruled Henry's counsel's first request for a running objection, and counsel did not pursue the second request to a ruling as required by rule 33.1(a). *See id.; see also* TEX.R.APP. P. 33.1(a). The same evidence came in elsewhere without objection.

This Court has held that the determination of whether a prior objection is sufficient to cover a subsequent offer of similar evidence requires a case-by-case analysis. *Correa v. GMC*, 948 S.W.2d 515, 518 (Tex. App.-Corpus Christi 1997, no pet.). Considerations in determining the adequacy of the objection are: (1) the proximity of the objection to the subsequent testimony; (2) which party has elicited the subsequent testimony; (3) the nature and similarity of the subsequent testimony as compared to the prior testimony and objection; (4) whether the subsequent testimony has been elicited from the same witness; (5) whether a running objection was requested or granted; and (6) whether any other circumstances suggests that the objection should not have to be re-urged. *Id.* at 518–19.

Here, Henry did not argue to the trial court that his relevancy objections were based on the Doctors' allegations of violations of rule 13 and chapters 9 and 11, not chapter 10. Had he done so, application of the *Correa* factors might lead to the conclusion that Henry adequately preserved his objections to the testimony. *See id.* However, Henry did not specifically object

on that basis, and he did not object to proceeding under chapter 10 even after repeated references by opposing counsel to its provisions. The trial court ruled on Henry's objections within that context, unaware of Henry's reason for objecting on relevancy grounds. Thus, on this record, I would conclude that Henry did not preserve error over his objections to Dr. Mastin and Dr. Canterbury's testimony. *See Duperier v. Tex. State Bank*, 28 S.W.3d 740, 755–56 (Tex. App.-Corpus Christi 2000, pet. dism'd by agr.).

### C. Post–Sanctions Preservation Regarding the Specificity of the Sanctions Order

On July 31, 2002, the trial court signed an order granting the Doctors' motions for sanctions. It ordered payment by Henry of $50,000 into the registry of the court, or $25,000 for each of the Doctors' motions. On August 2, 2002, the trial court signed findings of fact and conclusions of law regarding its imposition of sanctions as well as a revised order incorporating its findings and conclusions. On August 26, 2002, Henry filed a post-sanctions motion for new trial and a motion to modify, vacate, or reform the sanctions order (the "First Post–Sanctions Motions"). *See* TEX.R. CIV. P. 329b. The First Post–Sanctions Motions cross-reference and incorporate one another.

### 1. The First Post–Sanctions Motions

Among thirty-nine points urged as grounds for vacating the sanctions order, Henry asserted in the First Post–Sanctions Motions that: (1) the Doctors' motions for sanctions did not request relief under chapter 10; (2) the trial court abused its discretion in allowing and considering evidence of Henry's past conduct in other lawsuits or claims; and (3) the alternative pleading allegations against the

Doctors are legally and factually insufficient to support the imposition of sanctions. Nowhere in the First Post–Sanctions Motions did Henry assert that the findings in the sanctions order did not adequately detail the sanctionable conduct or explain the basis for the sanction.

### 2. The Supplemental Post–Sanctions Motion

On September 23, 2002, more than thirty days after the trial court signed the modified sanctions order on August 2, 2002, Henry filed his "First Supplemental Motion to Vacate, Modify, Correct or Reform Modified Judgment" (the "Supplemental Post–Sanctions Motion"). Among thirteen grounds, the Supplemental Post–Sanctions Motion asserted for the first time that "This Court's sanctions order fails to sufficiently set out this Court's findings of good cause justifying the imposition of sanctions."

### 3. The Post–Sanctions Hearing

The trial court heard Henry's post-sanctions motions on October 15, 2002. Henry appeared for this hearing in person. The trial court sustained the Doctors' objection to reopening the evidence but permitted Henry to make a bill of exceptions of his testimony. By written orders that same date, the trial court denied the motion for new trial and the supplemental motion to modify. The record does not reflect an order denying the original motion to modify, vacate, or reform the sanctions order.

### 4. The Reconsideration Motion

On November 5, 2003, Henry filed a motion to either reconsider or modify, correct or reform the modified judgment (the "Reconsideration Motion"). Among nineteen grounds, Henry urged:

(1) "This Court's sanctions order fails to sufficiently set forth this Court's find-

ings of good cause justifying the imposition of sanctions.... Furthermore, the order fails to explain the basis for the sanction imposed as required by section 10.005 of the Texas Civil Practice and Remedies Code."

(2) "The sanctions order here, however, does not specifically identify the offending allegation or factual contention, but instead states broadly that 'each and all of the allegations' were not likely to have evidentiary support after a reasonable opportunity for investigation. This vague statement does not satisfy Chapter 10's specificity requirement."

(3) "The order does not state, with particularity, good cause for finding that the pleadings in this case were groundless and brought in bad faith for purposes of harassment or that the pleadings did not and could not, after a reasonable opportunity for discovery, have an evidentiary basis. Instead, the order merely recites the rule and the chapter, without including a specific description of the offending conduct or a reason for imposing the sanctions."

However, the trial court decided that Henry's specificity objections, filed more than thirty days after the modified sanctions order, came too late to be considered.

### 5. The Reconsideration Order

By written order dated November 14, 2002, the trial court found that the First Post–Sanctions Motions "were the only timely filed motions on August 22, 2002." It specifically found: "All new arguments and requests for relief not timely filed within 30 days of the August 2, 2002 order, are DENIED because they were not timely raised." *See Willacy County Appraisal Review Bd. v. S. Padre Land Co.,* 767 S.W.2d 201, 202 (Tex.App.-Corpus Christi 1989, no writ) ("We hold, therefore, that all motions for new trial to be timely filed,

whether original or amended must be filed within thirty days after the judgment is signed by the trial court.").

### D. Appellate Preservation Regarding the Specificity of the Sanctions Order

Henry raises forty-four issues and sub-issues on appeal. In none of them does he challenge the trial court's denials of his post-sanctions motions. Specifically, Henry does not assert on appeal that the trial court abused its discretion in denying as untimely all grounds not raised within thirty days of the sanctions order. Henry raised his complaint regarding the specificity of the sanctions order for the first time on September 23, 2002, which was untimely. I would not consider Henry's specificity complaint in this appeal. *See id.* A complaining party's failure to object to the form of the sanctions order waives the error for appellate review. *Alexander v. Alexander,* 956 S.W.2d 712, 714–15 (Tex. App.-Houston [14th Dist.] 1997, pet. denied); *Campos v. Ysleta Gen. Hosp., Inc.,* 879 S.W.2d 67, 70 (Tex.App.-El Paso 1994, writ denied); *McCain v. NME Hosp., Inc.,* 856 S.W.2d 751, 756 (Tex.App.-Dallas 1993, no writ); *Bloom v. Graham,* 825 S.W.2d 244, 247 (Tex.App.-Fort Worth 1992, writ denied). I would find that Henry failed to preserve for our review his complaint about the specificity of the sanctions order. *See* Tex.R.App. P. 33.1(a); *see also Alexander,* 956 S.W.2d at 715.

Thus, given this record, I would hold that Henry waived two of the three grounds the majority finds for reversing the sanctions order: (1) Henry waived his complaint that he did not receive notice that the Doctors sought sanctions under chapter 10 when he failed to object or seek a continuance of the sanctions hearing on that basis; and (2) Henry waived any complaint the sanctions order did not adequately detail the sanctionable conduct or explain the basis for the sanctions when he failed to timely raise the objection in his post-sanctions motions and then failed to challenge the trial court's untimeliness ruling on appeal. I turn to the third ground on which the majority reverses the sanctions order, that an alternative pleading cannot serve as the basis of sanctions under chapter 10.

### II. THE TRIAL COURT'S DISCRETION

#### A. Presumptions and Burdens of Proof in Sanctions Motions

Generally, courts presume that pleadings and other papers are filed in good faith. *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex.1993) (orig.proceeding). In determining if sanctions are proper, the trial court must examine the circumstances existing when the litigant filed the pleading. *See Griffin Indus. v. Grimes,* No. 04–02–00430–CV, 2003 WL 1911993, * 4 (Tex.App.-San Antonio Apr. 23, 2003, no pet.) (applying good-faith presumption to chapter 10); *see also Home Owners Funding Corp. of Am. v. Scheppler,* 815 S.W.2d 884, 889 (Tex.App.-Corpus Christi 1991, no writ) (applying good-faith presumption to rule 13). The trial court considers the acts or omissions of the represented party or counsel, not merely the legal merit of a pleading or motion. *Grimes,* 2003 WL 1911993, * 4; *N.Y. Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 205 (Tex.App.-Dallas 1993, no writ). The party seeking sanctions bears the burden of overcoming the presumption of good faith in the filing of pleadings. *Tanner,* 856 S.W.2d at 731.

#### B. Standard of Review

Imposing an available sanction is left to the sound discretion of the trial court.

*Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990); *Rudisell v. Paquette*, 89 S.W.3d 233, 236 (Tex.App.-Corpus Christi 2002, no pet.). We may not substitute our judgment for the trial court's. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978). The test for determining if the trial court abused its discretion is whether it acted without reference to any guiding rules and principles to the extent the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Alejandro v. Bell*, 84 S.W.3d 383, 392 (Tex.App.-Corpus Christi 2002, no pet.). A trial court abuses its discretion in imposing sanctions only if it bases its order on an incorrect view of the law or an erroneous assessment of the evidence. *Randolph v. Jackson Walker, L.L.P.*, 29 S.W.3d 271, 276 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). A party attacking a trial court's decision as an abuse of discretion carries a heavy burden. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding).

### C. Analysis

#### 1. The Trial Court's Discretion to Sanction under Chapter 10

Section 10.001 of chapter 10 provides:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM.CODE ANN. § 10.001 (Vernon 2002). A court may punish violations of chapter 10 by imposing sanctions on the "person, [the] party represented by the person, or both" who "has signed [the] pleading or motion in violation of Section 10.001." TEX. CIV. PRAC. & REM.CODE ANN. § 10.004(a) (Vernon 2002).

In two sub-issues, Henry complains the trial court abused its discretion in concluding that a pleading that asserts alternative claims without identifying particular defendants to which each claim applies is sanctionable. He maintains that allegations in the petition here asserted claims against the Doctors for negligent acts other than prescribing Propulsid. Henry argues that the Doctors did not meet their burden of overcoming the presumption of good faith that attached to the papers he filed. In a separate sub-issue, he asserts that the only way his subjective bad faith could be proved was through his testimony at the sanctions hearing, which was lacking. However, unlike rule 13, section 10.001 of chapter 10 does not expressly include bad faith as an element of the conduct it prohibits. *See id.* § 10.001. Further, assum-

ing, without deciding, that section 10.001 of chapter 10 imposes an implied bad-faith element, I would conclude that sanctionable conduct may be proved by circumstantial as well as direct evidence. *See Schexnider v. Scott & White Mem'l Hosp.*, 953 S.W.2d 439, 441–42 (Tex.App.-Austin 1997, no writ) (holding that imposition of sanctions against attorney who filed medical malpractice claim against twenty-nine physicians and then non-suited all twenty-nine was supported by reasonable inference that attorney joined physicians knowing they only had indirect connection to claim and that mere filing of suit would have coercive effect on claim).

The trial court took judicial notice of the pleadings in this case, and I agree with the majority that allegations in the petition that asserted claims against the Doctors for negligent acts other than prescribing Propulsid is some evidence mitigating against the imposition of sanctions. However, the petition shows that the Doctors had only indirect connections to the claims. Further, Dr. Mastin and Dr. Canterbury testified that Henry had filed a "word-for-word" identical lawsuit against them without a reasonable basis and asserted unfounded claims in two more cases. The witnesses also testified that Henry quickly withdrew from his representation of the claimants in the other cases, which Henry also had pursued without a reasonable basis. Further, I am unpersuaded that the looming statute-of-limitation deadline excuses Henry's pleading. Henry had represented the plaintiff at least four months before he filed the petition, long enough to obtain the relevant medical records. Moreover, Henry continued to represent the plaintiff after he filed a motion to withdraw as well as after the trial court

signed the order of withdrawal.[5] I would find that the allegations in the petition and the nonsuit of the claims after the Doctors filed motions for sanctions support an inference that Henry filed suit knowing that the Doctors only had an indirect connection to the claim and that the mere filing of suit would have a coercive effect. *See id.* I would conclude that some evidence reasonably supports the imposition of sanctions. *See Zorilla v. Wahid,* 83 S.W.3d 247, 255 (Tex.App.-Corpus Christi 2002, no pet.) ("An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence reasonably supports the trial court's decision.").

Also as a sub-issue within his first issue, Henry complains of the trial court's exclusion of evidence Henry offered during the hearing on his post-sanctions motions, evidence he asserts demonstrated his reasonable basis for filing suit against the Doctors. Whether a motion for new trial will be granted or denied is within the trial court's discretion. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983), *overruled on other grounds, Moritz v. Preiss,* 121 S.W.3d 715 (Tex.2003). Other than arguing that he was not subpoenaed by the Doctors to appear at the sanctions hearing, Henry did not explain his failure to file a written response to the sanctions motions or his failure to appear and present evidence to the court at the sanctions hearing. He did not offer proof that the evidence had come to his attention only after the sanctions hearing. Nor did he maintain he had used due diligence in procuring the evidence or any of the other predicates that would have informed the trial court's exercise of discretion in considering the evidence after having ruled already on the

5. The motion to withdraw cited conflict of interest as Henry's basis for withdrawal. In a bill of exceptions of Henry's testimony at the post-sanctions hearing, Henry said he withdrew because he was not interested in pursuing the case.

Doctors' sanctions motions. *See Jackson,* 660 S.W.2d at 809–10; *see also Dankowski v. Dankowski,* 922 S.W.2d 298, 305 (Tex. App.-Fort Worth 1996, writ denied). Finally, Henry does not challenge on appeal the trial court's denial of his motion for new trial. I would hold that the trial court did not abuse its discretion in refusing to consider the evidence Henry offered in support of his post-sanctions motions. *See Dankowski,* 922 S.W.2d at 305.

I have scrutinized the trial court's findings and conclusions under an abuse-of-discretion standard. I cannot conclude that the trial court, in sanctioning Henry, acted unreasonably, arbitrarily, or without reference to chapter 10 of the civil practice and remedies code. *See Zorilla,* 83 S.W.3d at 255. I would overrule Henry's first issue complaining of the trial court's exercise of discretion in sanctioning him.

### 2. The Trial Court's Discretion in Determining the Amount of Sanction

Henry's second issue claims that the $50,000 sanction is excessive. An imposed sanction must not be excessive. *Trans-American Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991); *Roberts v. Golden Crest Waters, Inc.,* 1 S.W.3d 291, 292 (Tex.App.-Corpus Christi 1999, no pet.). Scrutinizing the imposed sanction under an abuse-of-discretion standard, I cannot conclude that the trial court acted without reference to any guiding rules and principles in determining the amount of sanction. *See Downer,* 701 S.W.2d at 241–42. I would find that the imposed $50,000 sanction ($25,000 for each of the two Doctors) is not clearly arbitrary and excessive. *Compare Skepnek v. Mynatt,* 8 S.W.3d 377, 380 (Tex.App.-El Paso 1999, pet. denied) (upholding $25,000 sanction to be paid into registry of court pursuant to chapter 10) *with Metzger v. Sebek,* 892 S.W.2d 20, 53 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (reversing as abuse of discretion rule 13 sanction of $994,000 plus interest). Thus, I also would overrule Henry's second issue complaining of the amount of the sanction.

Accordingly, I would affirm the trial court's sanctions order.