NUMBER
13-04-426-CV

 

                         COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

BRADFORD M. CONDIT,                                           Appellant,

 

                                           v.

 

LISA GONZALES,                                                      Appellee.

 

 

 

             On appeal
from the County Court at Law No. 2

                           of
Nueces County, Texas.

 

 

 

                     MEMORANDUM
OPINION

 

      Before Chief
Justice Valdez and Justices Rodriguez and Garza

Memorandum Opinion by Justice Rodriguez

 








This
is an appeal from a sanctions order arising out of a suit for temporary
injunction.  After the trial court granted summary judgment in favor of
appellee Judge Lisa Gonzales[1]
on the basis of judicial immunity, it granted sanctions against appellant
Bradford M. Condit, attorney for Mary "Judy" Dancer Perring
(Perring), former wife of the deceased, Gordon N. Dancer (Dancer).[2]

On
appeal, appellant complains that the trial court erred (1) in finding Perring's
suit against Judge Gonzales violated section 10.005 of the Texas Civil Practice
and Remedies Code and rule 13 of the Texas Rules of Civil Procedure, (2) in
failing to adequately state the basis of its conclusions, (3) in allowing
undisclosed witnesses to testify regarding attorney's fees, and (4) in awarding
attorney's fees that were arbitrary, excessive, unreasonable, without
evidentiary support, and unconditional.  As reformed, in accordance with this
opinion, the judgment is affirmed.

I. 
Background








On
September 29, 2003, clients of Dancer, who had recently died, and his tax and
management consulting business filed an application for temporary injunction
against Perring, Dancer's former secretary Darlene McCormack, and the property
owner Landlord Resources, Inc.[3] 
They sought to enjoin the defendants from entering Dancer's office and removing
any files, documents or electronic files or documents, or from interfering with
their right to possession.  Judge Gonzales was the presiding judge in this
injunction action.

On
October 1, 2003, Judge Gonzales signed an agreed order for temporary injunction
which stated, in relevant part, as follows:

1.       The
Plaintiffs and/or their representatives [and] Defendant Mary "Judy"
Dancer [Perring] or [her] representative will meet at 3:30 p.m. on October 1,
2003 at the accounting offices of Gordon Dancer . . . for the purpose of
removal of Plaintiffs' files, accounting, tax and other business records
together with any tax or accounting work in progress.

 

2.       Any
disputes between plaintiffs and Defendant Dancer [Perring] as to Plaintiff's
right of possession to any particular documents or record, such document or
record shall be taken into possession by an attorney of record and delivered to
this court for later disposition upon motion and hearing or agreement by the
parties.

 

3.       Defendants
Judy Dancer [Perring] and Darlene McCormack are enjoined from removing,
destroying, copying, altering or concealing any of Plaintiffs' files,
accounting, tax and other business records together with any tax or accounting
work in progress that are later discovered upon any further inventory of Gordon
Dancer's possessions.

 








An
entry on Judge Gonzales's October 3, 2003 civil docket in the injunction action
indicates that on that day "Mark DeKock with Burkett's office appeared
w[ith] documents and computer towers, [t]elephone conference w[ith] Brad Condit,
David Burkett and Mark DeKoch; [d]ocuments & towers held by court subject
to hearing."[4] 
At the sanctions hearing, appellant confirmed that he participated in this
telephone conference and testified that during the conference he informed Judge
Gonzales that the property was from Dancer's office, no interpleader had been
filed, and she should not take possession of it.  According to appellant, Judge
Gonzales said that she was going to take possession of it and that either
attorney/plaintiff Burkett or a lawyer from his office should file an interpleader
sometime that afternoon.  See Tex.
R. Civ. P. 39 (providing that the court shall order that a person needed
for just adjudication be made a party). 
A hearing to determine matters related to the disputed property was
scheduled for October 6, 2003.








At
approximately 4:00 p.m., on October 3, 2003, Reece Rozelle, who had been
Dancer's attorney in his divorce action, filed an interpleader petition in the
injunction action.  See Union Gas Corp. v. Gisler, 129 S.W.3d 145, 153 (Tex. App.BCorpus Christi 2003, no
pet.) ("The purpose of interpleader is to allow an innocent stakeholder
facing rival claims to let the courts decide who is entitled to the fund and
thus avoid the peril of acting as judge and jury itself.").  In his
petition, Rozelle asserted that he had reasonable grounds to anticipate rival
claims to disputed property that included two computer towers and miscellaneous
life insurance documents by persons entitled to be administrators of Dancer's
estate, that the rival claimants were persons representing Perring and
individuals claiming to represent the estate or community interest in the
estate, that it was believed that the property may contain information
regarding qualification of the administrator, and that Rozelle had been
threatened with civil and criminal action for not turning over the property to
one rival.[5] 
The petition indicated that the court had possession of the disputed property
that was delivered to the court earlier in the day.  See id. at 152 (explaining
that an interpleading party is entitled to interpleader relief if the following
elements are met:  "(1) he is either subject to, or has reasonable grounds
to anticipate, rival claims to the same fund or property; (2) he has not
unreasonably delayed filing his action for interpleader, and (3) he has
unconditionally tendered the fund or property into the registry of the
court.").  Rozelle prayed that the court set his petition for hearing and,
after the hearing, sign an order discharging him from the suit, enjoin the
rival claimants from taking action against him, and award him costs.[6]








A
hearing was set for October 6, 2003.  According to Judge Gonzales, the hearing
was scheduled so that she could attempt to determine who had the right to
possession of the computer towers and miscellaneous life insurance documents as
directed by the October 1st temporary injunction order.  However, on October
6th, before the scheduled hearing, appellant filed a motion to
disqualify/recuse Judge Gonzales.  The motion asserted that, pursuant to rule
18b of the Texas Rules of Civil Procedure, "because of collateral
proceedings before a governmental investigatory commission, the nature of which
is confidential, the current judge's impartiality might be reasonably
questioned," see Tex. R.
Civ. P. 18b(2)(a), and that "the judge has a direct adverse legal
interest as to a party in this case."  See id. at rule 18b(1)(b)
& (2)(b), (e), (f)(ii), (f)(iii).  In response to the motion to recuse,
Judge Gonzales informed all parties at the hearing that she had decided not to
recuse herself and, without stating that there was good cause for further
action taken, had signed an order referring the case to Judge Darrell Hester, Presiding
Judge of the Fifth Administrative Judicial District, to make that
determination.  See id. at
rule 18a(d).  Based on this decision, Judge Gonzales informed appellant that
she was unable to do anything further with the case and that the matters regarding
the property at issue should be considered by another judge.  Thereafter, Judge
Hester assigned the case to Judge Martin Chiuminatto.








On
October 8, 2003, when appellant filed his client's original answer generally
denying plaintiffs' claims, he also filed her crossclaim and counterclaim
against Rozzell, among others, for invasion of privacy, conversion and
conspiracy to commit theft under the Texas Civil Liability Theft statute.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 134 (Vernon 2005).  This
same pleading named Judge Gonzales as a defendant and asserted that she was
"in possession of personal property that was illegally taken from
Plaintiff Mary Dancer's [Perring's] deceased husband's office.  Defendant
Gonzales is and has exercised control and possession of it, such possession and
control lies exclusively with Mrs. Dancer [Perring], Defendant Gonzales not
having any legal right to possession."  Judge Gonzales filed an answer and
supplemental answer generally denying the claims, asserting the affirmative
defense of immunity, and cross-claiming or counterclaiming for sanctions.

On
March 15, 2004, Judge Gonzales moved for summary judgment based on the
affirmative defense of judicial immunity asserting that she was "entitled
to summary judgment because she was immune, as she was acting in her official
capacity at all times with respect to the underlying case at issue."  On
that same day, Judge Gonzales filed a motion for sanctions, later amended on
April 23, 2004.  In her motion she alleged that appellant had filed frivolous
and groundless pleadings and that she was immune and should not have been named
as a party because she was acting in her judicial capacity at all times.  She
urged sanctions against appellant and Perring under chapters 9 and 10 of the
Texas Civil Practice and Remedies Code, see id. '' 9.001-.014, 10.001-.006 (Vernon 2002)
(providing for groundless and frivolous pleadings and claims and for
sanctions), and rules 13 and 215-2b of the Texas Rules of Civil Procedure.  See
Tex. R. Civ. P. 13, 215-2b
(providing sanctions for groundless pleadings and identifying types of sanction
that can be imposed).  In support of her sanctions motion, Judge Gonzales
incorporated exhibits 1 through 7 from her motion for summary judgment.[7]








On
April 26, 2004, appellant's client responded to Judge Gonzales's motion for
summary judgment and filed her own summary judgment motion arguing that her
claim against Judge Gonzales was filed in good faith and that there was no
evidence that the claims were motivated by a "consciously [sic] doing of a
wrong for a dishonest, discriminatory or malicious purpose."  See Appleton v. Appleton, 76 S.W.3d 78, 86-87 (Tex. App.BHouston
[14th Dist.] 2002, no pet.).  On May 27, 2004, after considering the evidence
before it, case law, and arguments of counsel, the trial court granted Judge
Gonzales's motion for summary judgment.[8]

At
the May 27, 2004 hearing, the trial court took judicial notice of all pleadings
and motions on file in the case and heard evidence on Judge Gonzales's amended
motion for sanctions.  In its order dated June 7, 2004, the trial court awarded
sanctions against appellant pursuant to rule 13 and section 10.01 and included
the following findings in its order:

1.  [T]here was a
cause of action, No. 03-62094-2, filed in County Court at Law No. 2 involving
disputed property which was pending at the time that [appellant] filed his
Motion to Recuse [Judge Gonzales] from the case;

 

2.  [T]here was a
cause of action pending (cause no. 03-62094-2), in County court at Law No. 2
when [appellant], on behalf of his client, signed pleadings naming Judge
Gonzales as a Defendant to the lawsuit she was presiding over;

 

3.  [T]he pleading
entitled "Defendant, Mary Dancer's [Perring's], Original Answer, Cross-Claim
and Counter-claim" was frivolous, groundless and was brought in bad faith
and for purpose of harassment;








 

4.  [S]pecifically,
[appellant] alleged that Judge Lisa Gonzales was in possession of personal
property that was illegally taken from [Perring's] deceased husband's office. 
This allegation is groundless and without factual basis as, at the time Cause
No. 03-62094-2 was filed, Lisa Gonzales was the presiding judge of County Court
at Law No. Two;

 

5.  [T]he pleading
stating that Judge "Gonzales is and has exercised control" of such
property is also groundless and without factual basis because, at the time
Cause No. 03-62094-2 was filed, Lisa Gonzales was the presiding judge of County
Court of Law No. Two;

 

6.  [Appellant]
ignored a body of Texas case law which mandates judicial immunity from suit for
official acts performed by judges;

 

7.  [Appellant]
filed a pleading which was groundless in violation of Tex. R. Civ. P. 13;

 

8.  The allegations
in the pleading filed against Judge Gonzales were not warranted by existing law
or by a nonfrivolous argument for the extension, modification or reversal of
existing law;

 

9.  None of the
allegations made had evidentiary support;

 

10. The counterclaim
filed against Defendant Gonzales has no basis in fact, is not warranted by a
good faith argument for the extension, modification or reversal of existing law
and no good cause exists for its filing;

 

11. [Appellant],
attorney for Mary Dancer [Perring], in filing the Original Answer, Cross and
Counterclaim against Judge Gonzales, filed a pleading which was frivolous in
nature and offensive in character in violation of [rule] 13 and [section]
10.001;

 

12. It has caused
[Judge Gonzales] to incur substantial expense; and

 

13.
[T]he conduct of [appellant is] egregious.








The
trial court ordered that Judge Gonzales be awarded $15,000.00 in attorney's
fees and $811.04 in costs as sanctions.  It also awarded $1,000.00 to Judge
Gonzales if a motion for new trial was filed, $10,000.00 if appeal is taken to
the court of appeals, $7,500.00 if a petition for review is filed with the
Texas Supreme Court, $5,000.00 if briefing on the merits is granted by the
supreme court, and $3,000.00 if oral argument is ordered by the supreme court. 
Finally, the trial court found that the evidence presented at the sanctions
hearing did not implicate appellant's client in the sanctionable conduct and
denied sanctions as to her.  The trial court signed the sanctions order on June
7, 2004.

On
July 9, 2004, all claims between Judge Gonzales and appellant's client were
severed out and given a new cause number.  It is from the sanctions order that
this appeal is taken.

II. 
Standard of Review








The
standard of review in a sanctions case is abuse of discretion.  GTE
Communications Sys. Corp. v. Tanner, 856 S.W.2d 725, 730 (Tex. 1993) (orig.
proceeding); Kutch v. Del Mar College, 831 S.W.2d 506, 508 (Tex. App.BCorpus Christi 1992, no writ). 
To determine if a trial court abused its discretion, this Court must decide
whether the trial court acted without reference to any guiding rules or
principles, in other words whether the act was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-02 (Tex. 1985).  A trial
court abuses its discretion in imposing sanctions if the order is based on an
erroneous view of the law or a clearly erroneous assessment of the evidence.  Monroe
v. Grider, 884 S.W.2d 811, 816 (Tex. App.BDallas
1994, writ denied).  Merely because a trial court may decide a matter within
its discretion in a different manner than an appellate court would in a similar
circumstance does not demonstrate that an abuse of discretion has occurred.  Downer,
701 S.W.2d at 242.  Our scope of review is the entire record that was before
the trial court.  See Kutch, 831 S.W.2d at 508.  We review the
conflicting evidence in the light most favorable to the trial court's ruling,
and draw all reasonable inferences in favor of the court's judgment.  See id.

III. 
Analysis

A. 
Violation of Section 10.001 and Rule 13

Citing
to section 10.001 of the civil practices and remedies code, the trial court's
judgment found that appellant filed a pleading that was not warranted by
existing law or by a nonfrivolous argument for the extension, modification or
reversal of existing law and that none of the allegations had evidentiary
support.  See Tex. Civ. Prac.
& Rem. Code Ann. '
10.001 (Vernon 2002).  It also found that the pleading was groundless pursuant
to rule 13 of the rules of civil procedure.  See Tex. R. Civ. P. 13.  By his second issue, appellant complains
that the trial court erred in finding that Perring's suit violated section
10.001 and rule 13.      








Section
10.004 provides "[a] court that determines that a person has signed a
pleading or motion in violation of Section 10.001 may impose a sanction on the
person, a party represented by the person, or both."  Tex. Civ. Prac. & Rem. Code Ann. ' 10.004 (Vernon 2002). 
Section 10.001 states that a person signing a motion or pleading certifies that
"to the signatory's best knowledge, information, and belief, formed after
reasonable inquiry:"  (1) the motion or pleading is not presented for an
improper purpose, (2) each legal contention is warranted, (3) each factual
contention is likely to have evidentiary support, and (4) each denial of a
factual contention is warranted.  Id. '
10.001.  To prevail under chapter 10, "there must be little or no basis for
the claims, no grounds for legal arguments, misrepresentation of law or facts,
or legal action that is sought in bad faith."  Herring v. Welborn,
27 S.W.3d 132, 143 (Tex. App.BSan
Antonio 2000, pet. denied).  "In imposing sanctions under this chapter, a
trial court is required to specifically detail the sanctionable conduct in its
order."  Rudisell v. Paquette, 89 S.W.3d 233, 238 (Tex. App.BCorpus Christi 2002, no
pet.) (citing section 10.005 which mandates that "[a] court shall describe
in an order imposing a sanction under this chapter the conduct the court has
determined violated Section 10.001 and explain the basis for the sanction
imposed").








Similarly,
rule 13 allows a court to impose sanctions on counsel for pleadings, motions,
or other papers signed and filed that are groundless and brought in bad faith
or groundless and brought for the purpose of harassment.  Tanner, 856
S.W.2d at 730. "'Groundless' for purposes of this rule means no basis in
law or fact and not warranted by a good faith argument for the extension,
modification, or reversal of existing law."  Tex. R. Civ. P. 13.  "Generally, courts presume that
pleadings and other papers are filed in good faith."  Henry v. Low,
132 S.W.3d 180, 182 (Tex. App.BCorpus
Christi 2004, pet. granted) (citing Tanner, 856 at 730).  "The
party seeking sanctions bears the burden of overcoming the presumption of good
faith in the filing of pleadings." Id. at 183 (citing Tanner,
856 S.W.2d at 731).  "In determining if sanctions are proper [under rule
13], the trial court must examine the circumstances existing when the litigant
filed the pleading."  Id. at 182-83; Rudisell, 89 S.W.3d at
237; Alejandro v. Bell, 84 S.W.3d 383, 392 (Tex. App.BCorpus Christi 2002, no
pet.).  "The trial court considers the acts or omissions of the
represented party or counsel, not merely the legal merit of a pleading or
motion."  Henry, 132 S.W.3d at 183.  Rule 13 also provides: 
"No sanctions under this rule may be imposed except for good cause, the
particulars of which must be stated in the sanction order."  Tanner,
856 S.W.2d at 730.

1. 
Bad Faith

Asserting
that Judge Gonzales's attorney, Richard Crews, conceded that there was no ill
motive by using a lawsuit to get Perring's property and that a lawsuit against
Gonzales was the appropriate method for Perring to get her property from
Gonzales, appellant argues that appellee failed to prove the bad faith element
of her claim for sanctions.  

To
support his contention that Crews conceded that filing a lawsuit against
Gonzales was appropriate, appellant refers us to the following testimony from
the sanctions hearing:

Q: 
[Appellant]:      So you're saying that we should have filed a lawsuit in J.P.
court to get the right to the property?

 

* *
* * *

A:  [Crews]:           Yes. . . .

Q:                         And
in order to do so, you would have to sue the person in possession of the
property which would have been Ms. Gonzales, correct?

 

A:                         You could have filed that, too,
and ---

* *
* * *








Q:                         Are
you familiar with the . . . right to possession statute?

 

A:                         Yes.

* *
* * *

Q:                         And
you have to sue the person in possession of the property, don't you?

 

A:                         Yes.

However,
Crews also provided the following testimony at the hearing:

Q:
[Appellant]        Let's imagine what could have been done.  Hypothetical
question.  What could have been done back in October to have resolved this
case?

 

A:
[Crews]             You could have let the hearing go forward on who had the
property rather than recuse the Judge.

 

Q:                         Okay.

 

A:                         That's
number one.  Let B you
asked, I'll answer.  Number one, you should not have recused the Judge and that
way there could have been a hearing about the property and a determination
made.  You could have filed a suit to right to trial by property and filed a
bond and taken immediate possession of the property.  You could have ---

 

Q:                         Wait
a minute.  Excuse me.  A right to ---

 

A:                         Right
to ---

 

Q:                         In
 J.P. Court?

 

A:                         Trial
of property.

 

Q:                         In
 J.P. Court?

 

A:                         Yes.

 








Q:                         Okay.

 

The
Court:   Wait a minute.  Let him finish his question before you ask the next
question.

 

Appellant:    Okay.

 

A.                         You
could have contacted the attorneys and see if there could have been an Agreed
Order without recusing the Judge and we could have come up with a Judge that
could have agreed on [sic] to sign the Agreed Order to allow you to get the
property.  Those are things that ---

 

Q:                         So
you're saying that we should have filed a lawsuit in J.P. Court to get the
right to property?

 

* * * * *

 

A:                         Yes.

 

Q:                         And
in order to do so, you would have had to sue the person in possession of the
property which would have been Ms. Gonzales, correct?

 

A:                         You
could have filed that, too, and ---

 

Q:                         Then
she would have had a lawsuit against her, then?

 

A:                         Possession
---

 

Q:                         Thank
you, Mr. Crews.

 

A:                         Let
me finish my answer.  You would have necessarily had to have gotten everybody
who had a claim to the property involved in the same suit.  I don't think you
would have had to file to sue the judge.

 

Q:                         Are
you familiar . . . with the right to possession statute?

 








A:                         Yes.

 

Q:                         Have
you ever filed one?

 

A:                         Yes.

 

Q:                         And
you have to sue the person in possession of the property, don't you?

 

A:                         Yes. 

Additionally,
regarding appellant's contention that Crews conceded that appellant had no ill
motive in filing the suit against Judge Gonzales, Crews testified as follows:

Q:
[Appellant]        Mr. Crews, are you alleging that Mrs. Perring and I have ill
motives in seeking the property that was delivered to . . . Ms. Gonzales.

 

A: [Crews]             No

* *
* * *

A:  
                      I have no position with respect to the property involved
in this case, nor did my client.

 

Nowhere in this
testimony does Crews admit or concede that there was no ill motive in filing a
lawsuit against Judge Gonzales to get property.  That question was not asked.

From
our review of Crews's testimony at the sanctions hearing, we cannot conclude
that Crews conceded that a lawsuit against Gonzales was the appropriate method
for Perring to get her property from Gonzales or that there was no ill motive
by using a lawsuit to get Perring's property.  Thus, this argument fails.

 








2. 
Extending Existing Law

Relying
on Herring v. Welborn, 27 S.W.3d 132 (Tex. App.BSan Antonio 2000, pet. denied), appellant next
contends that "[w]hat the law is in the context of a judge taking
possession of stolen property without a judicial proceeding being instituted is
uncertain because it is new and unprecedented in legal historyBjust as it was uncertain
whether judicial immunity cloaked a probate judge who was sued in Herring." 
See id. at 144-46.  Appellant contends that the Herring court
reversed an order awarding sanctions because of murky law and that the
reasoning in Herring is substantial authority to support this Court's
reversal of the sanctions order.  We disagree.

In
Herring, the appellate court vacated the trial court's award of
sanctions against a party who sued a probate county court judge who ordered the
sale of land during the probate of an estate.  See id. at 146.  The Herring Court explained that "[our] result today does not mean that prospective
litigants have license to sue trial judges.  Rather, under the facts before us,
in light of the trial record, and with the uncertainty that hangs over the
trial court's support for its sanctions award, monetary sanctions are not
appropriate."  Id.  The court in Herring based its reversal
of the sanctions order on the following:

1.       There
was scarce evidence of the factual misrepresentations that bear heavily upon
the case;

 

2.       The
sanctioned party's interpretation of the facts might be debatable, but it is
not without bases in the trial record;

 

3.       The
pleadings offered legal authority for the sanctioned party's debatable
jurisdictional arguments, although the trial court disagreed with his
interpretation of case law and statute;








4.       While
the sanctioned party sought to stretch the law to apply to his case, the legal
authority relied on was not misrepresented and offered at least a debatable
argument for extending jurisdiction; and

 

5.       Simply
because the trial court correctly rejected the sanctioned party's argument, it
did not mean that the party's actions were sanctionable.

 

See id.
at 144.  In Herring, the law was not murky as appellant suggests.  While
the Herring court was "unsure of the extent to which the trial
court awarded sanctions based upon . . . judicial immunity" and noted that
"judicial immunity is a defense, which would be an appropriate issue at,
for example, a summary judgment hearing," the basis for the court's
decision to reverse sanctions was because the sanctioned party's interpretation
of facts was not without basis in the trial record, his authorities offered at
least a debatable argument, and his attempt at reaching a favorable result had
some arguable legal basis.  See id. at 144, 144 n.5.








In
the present case, it is undisputed that Judge Gonzales was presiding over the
temporary injunction action filed against Perring.  It is also undisputed that
two computer towers and the life insurance documents about which appellant
complains were from Dancer's office.  The October 1, 2003 temporary injunction
agreed order provided  that "[a]ny disputes between plaintiffs and Perring
as to the plaintiffs' right of possession to any particular documents or
record, such document or record shall be taken into possession by any attorney or
record and delivered to this Court for later disposition upon motion and
hearing or agreement by the parties."  The order also enjoined Perring
from "removing, destroying, copying, altering or concealing any of
Plaintiffs' files, accounting, tax and other business records together with any
tax or accounting work in progress that are later discovered upon any further
inventory of Gordon Dancer's possessions."

The
property at issue was taken to Judge Gonzales's chambers after the order was
signed.  Following a phone conference regarding the challenged items in which
appellant and Judge Gonzales participated, an interpleader action was filed. 
There is some question as to whether these items were discussed at the October
1st meeting of plaintiffs, defendant and their representatives; however, the
property was specifically disputed when the interpleader action was filed on
the afternoon of October 3rd.  The property was at issue before appellant filed
Perring's motion to disqualify/recuse Judge Gonzales on October 6, 2003, the
same day that a hearing was scheduled to determine the property issues, and
before appellant filed his client's claim against Judge Gonzales on October 8,
2003.

Based
on the above, Herring does not support appellant's arguments.  Rather, Herring
supports a contrary conclusion.  We cannot conclude, as appellant asserts, that
the law is uncertain under the facts of this case and its application is new
and unprecedented as applied to the facts.  Furthermore, we cannot conclude
that appellant's interpretation of facts has a basis in the trial record, that
his authorities offer at least a debatable argument, and that his attempt at
reaching a favorable result by suing Judge Gonzales has some arguable legal
basis.  Cf. id. at 144, 144 n.5.








Appellant's
position below, and now on appeal, is based on his underlying premise that
Judge Gonzales took possession of allegedly stolen property without a judicial
proceeding being instituted.  In the cross/counter-claim against Judge Gonzales,
appellant asserted, on his client's behalf, that Judge Gonzales was "in
possession of personal property that was illegally taken from Plaintiff Mary
Dancer's [Perring's] deceased husband's office.  Defendant Gonzales is and has
exercised control and possession of it, such possession and control lies
exclusively with Mrs. Dancer [Perring], Defendant Gonzales not having any legal
right to possession."  The threshold question in this appeal is whether a
judicial proceeding had been instituted, such that Judge Gonzales had authority
to hold the materials in question in her chambers.[9] 
Based on the facts and the discussion set out above, we conclude that such a
judicial proceeding had been instituted, a judicial proceeding over which Judge
Gonzales was presiding when appellant filed his client's motion to recuse and
her claim against Judge Gonzales.  In light of the trial record and the law set
out above, and with the certainty with which the trial court awarded sanctions
against appellant, we conclude that monetary sanctions were appropriate.

3. 
Authority to Act

Appellant
also appears to be making a jurisdictional argument.  He contends that because
no pleading had been filed regarding the property before Judge Gonzales took
possession of it, she had no judicial authority to act and that a subsequently
filed pleading does not apply retroactively to give her that authority.








In
this case, the interpleader action bringing issues related to the possession of
the computer towers and the insurance documents was filed before the claim
against Judge Gonzales was filed.  In our review of a rule 13 sanctions award,
we examine the facts and circumstances as they existed at the time the suit
against Judge Gonzales was filed.  See Henry, 132 S.W.3d at 182-83; Rudisell,
89 S.W.3d at 237; Alejandro, 84 S.W.3d at 392.  We also consider the
acts of counsel, not merely the legal merit of a pleading or motion.  See
Henry, 132 S.W.3d at 183.  Thus, although the property may have been
delivered to Judge Gonzales's chambers before the interpleader action was
filed, the issues related to the possession of the computer towers and the
insurance documents were properly before the court well before appellant filed
his client's pleading and motion.  Thus, this argument fails.

Appellant
also cites Davis v. State, 928 S.W.2d 289, 291 (Tex. App.BFort Worth, 1996), rev'd,
956 S.W.2d 555 (Tex. Crim. App. 1997), to support his argument that in Texas there is no such thing as "retroactive jurisdiction."  In Davis, the
appellant challenged his revocation arguing that the order was void because the
district judge's order referring his cause to the magistrate was signed two
days after the plea had been taken, and, thus, did not confer jurisdiction to
the magistrate.  See id. at 290-91.  The Fort Worth Court of Appeals
agreed and reversed the judgment and remanded the case to the district court.  See
id. at 291.  However the Texas Court of Criminal Appeals concluded the
error was not jurisdictional and the conviction was not void and reasoned as
follows:








The district court
was authorized by statute to refer this case to a magistrate and purported to
do so when it signed the referral and adoption order.  The error in this case
concerned the process by which the district judge referred this case to its
surrogate, whose acts were adopted by the trial court.  Therefore, jurisdiction
was not affected and the order placing Appellant on probation was not void even
though a procedural irregularity arose due to the untimeliness of the referral
order.  This is not to say that the case was properly transferred, only that
the error was not jurisdictional and the conviction is not void.

 

Davis v.
State, 956 S.W.2d 555, 560 (Tex. Crim. App. 1997) (distinguishing the
distinct concepts of jurisdiction and authority to act).  Similarly, Judge
Gonzales had authority to act regarding the property at issue when the
interpleader action was filed.  The error, if any, concerned the process by
which the attorneys made the property available to Judge Gonzales.  Therefore,
jurisdiction was not affected even though a procedural irregularity in the
delivery of the property may have occurred.  See id.  Appellant's
reliance on the intermediate appellate court's opinion in Davis is
misplaced.

Accordingly,
we conclude the trial court did not abuse its discretion in finding that
Perring's suit violated rule 13 of the rules of civil procedure and 10.001 of
the civil practices and remedies code.[10] 
Appellant's second issue is overruled.

4. 
Basis for Trial Court's Conclusion








Appellant
asserts by his seventh issue that the trial court failed to adequately state
the basis of its conclusion as required by section 10.005 and rule 13.  See Tex. R. Civ. P. Ann. ' 10.005 ("A court
shall describe in an order imposing a sanction under this chapter the conduct
the court has determined violated Section 10.001 and explain the basis for the
sanction imposed."); GTE Communications Sys. Corp. v. Curry, 819 S.W.2d
652, 654 (Tex. App.BSan
Antonio 1991, no writ) (setting out that rule 13 requires the trial court to
state the particulars of the good cause for imposing sanctions).

Here,
the trial court concluded that appellant's claims against Judge Gonzales were
frivolous, groundless and brought in bad faith and for purpose of harassment. 
Specifically, in support of its conclusions, the trial judge found that the
allegation that Judge Gonzales was in possession of personal property that was
illegally taken from Dancer's office and the claim that Judge Gonzales is and
has exercised control of such property were groundless and without factual
basis because at the time those claims were filed Judge Gonzales was the
presiding judge of County Court at Law No. 2.  The trial court also found there
was a cause of action filed in County Court at Law No. 2 involving the disputed
property, pending at the time appellant filed his motion to recuse and when he
signed pleadings naming Judge Gonzales as a defendant to the lawsuit over which
she was presiding.  The trial court also found that appellant ignored the body
of Texas law which mandates judicial immunity from suit for official acts
performed by judges and the allegations against Judge Gonzales in the motion
and in the claims filed against her were not warranted by existing law or by a
nonfrivolous argument for the extension, modification or reversal of existing
law.  It also found that none of the allegations had evidentiary support.








Nonetheless,
appellant specifically asserts that the trial court omitted from its order
facts which appellant contends are undisputed.  He claims that if the following
allegedly undisputed facts had been recited there could be no basis to support
a sanctions order:

1.  The property
taken by [Judge] Gonzales came into Reese Rozzell's possession "a few
days" after Gordon's death which occurred the late afternoon of Sunday,
September 28, 2003;

 

2.  The October 1,
2003 Agreed Order only applied to the possession of the parties['] own property
as would be disputed during the Wednesday, October 1, 2003 meeting when all
parties would appear at the office for the sole purpose of taking possession of
their own property or by agency;

 

3.  Counsel for
[Judge] Gonzales admitted the claim against [Judge] Gonzales was not malicious
or motivated by anything other than the objective of gaining possession of Mrs.
Perring's property;

 

4.  Counsel for
[Judge] Gonzales admitted it would be proper for Mrs. Perring to sue [Judge]
Gonzales in a justice court for possession of the property;

 

5.  That at the time
[Judge] Gonzales took possession of the stolen property there was no pleading
filed regarding its possession or ownership; and

 

6.  That
jurisdiction can never be "retroactive" but any action taken without
jurisdiction is void from the beginning.

 








We first note
that allegedly undisputed facts two through six have been addressed in other
sections of this opinion, and the remaining undisputed fact is not necessary to
the disposition of this appeal.  See Tex.
R. App. P. 47.1 (providing that this Court "must hand down a
written opinion that is as brief as practicable but that addresses every issue
rased and necessary to final disposition of the appeal").  Nonetheless, to
the extent we could consider the above as conflicting evidence, while applying
the abuse of discretion standard for a sanctions order, we review the
conflicting evidence in the light most favorable to the trial court's ruling
and draw reasonable inferences in favor of the court's judgment.  See Kutch, 831 S.W.2d at 508.  In addition,

Rule 13 motions . .
. require the trial court to make factual determinations concerning whether a
party's legal position as stated in the pleadings is substantially justified. 
Obviously, a trial judge hearing the evidence, examining the credibility of the
witnesses, and familiar with the litigation practices of the local bar, is in a
much better position than an appellate court to determine whether Rule 13 has
been violated . . . .

Home Owners
Funding Corp. of Am. v. Scheppler, 815 S.W.2d 884, 888 (Tex. App.BCorpus Christi 1991, no
writ).  Thus, reviewing the entire record before the trial court and the
asserted facts in the light most favorable to the ruling, see Kutch, 831 S.W.2d at 508, we conclude the trial court properly complied with the
requirements of section 10.005 and rule 13.  It did not abuse its discretion by
omitting from its order the facts identified above.  We overrule appellant's
seventh issue.

B. 
Attorney's Fees Awarded as Sanctions

1. 
Testimony of Undisclosed Witness

By
his first issue, appellant contends that the trial court erred in allowing
attorney Thomas Nye, a witness who had not been disclosed, to testify at the
sanctions hearing.  Appellant asserts that without this testimony from Judge
Gonzales's only witness there was no evidence to support any award of
attorney's fees.








Where
the judgment is not one for earned attorney's fees but rather a judgment
imposing attorney's fees as sanctions, it is not invalid because a party fails
to prove attorney's fees.  Glass v. Glass, 826 S.W.2d 683, 688 (Tex.
App.BTexarkana 1992,
writ denied).  "When attorney's fees are assessed as sanctions, no proof
of necessity or reasonableness is required."  Miller v. Armogida,
877 S.W.2d 361, 365 (Tex. App.BHouston
[1st] 1994, writ denied); see Brantley v. Etter, 677 S.W.2d 503, 504
(Tex. 1984) (per curiam) (concluding that the amount of attorney's fees awarded
as sanctions for discovery abuse is solely within the sound discretion of the
trial judge and will only be set aside upon a showing of clear abuse of
discretion).  Therefore, even were we to conclude the trial court abused its
discretion in allowing Nye, an undisclosed witness, to testify, see Tex. R. Civ. P. 193.6(a) (providing,
with certain exceptions, that a party who fails to make a discovery response in
a timely manner may not introduce the testimony of a witness who was not timely
identified), there was no harm because the testimony is unnecessary to support
the trial court's award of attorney's fees as sanctions.  See Miller,
877 S.W.2d at 365; Brantley, 677 S.W.2d at 504.  In addition, Judge
Gonzales established good cause for not answering the requests for disclosure,
a rule 193.6 exception, as she was immune from suit, a defense established on
summary judgment prior to the sanctions hearing.  See Tex. R. Civ. P. 193.6(a)(1), (b).  We overrule appellant's first issue.

Likewise,
we overrule appellant's third issue wherein he asserts that the trial court's
award of attorney's fees was unreasonable and without evidentiary support.[11]








2.  Unconditional
Award of Post-Judgment Attorney's Fees 

 

By
his fourth, fifth, and sixth issues appellant asserts that the trial court
erred in awarding attorney's fees for the filing of a motion for new trial and
subsequent appeals that were not conditioned on the result of the motion or
appeals.  The trial court awarded $1,000.00 if a motion for new trial was
filed, $10,000 if an appeal to the court of appeals was filed, $7,500.00 if a
petition for review was filed with the Texas Supreme Court, $5,000.00 if
briefing on the merits was granted, and $3,000.00 if oral argument was
ordered.  These awards were not, as appellant asserts, conditioned on
appellant's motion or appeals being unsuccessful.








The
award of the post-judgment attorney's fees was apparently designed to
compensate Judge Gonzales for the expenses of defending her award.  Law
Offices of Windle Turley, P.C. v. French, 164 S.W.3d 487, 492‑93 (Tex. App.BDallas 2005, no pet.)
(holding that "the appellate attorney fees award was designed to
compensate appellees for the expense of having to defend its sanctions award in
the event appellant pursued an unsuccessful appeal").  We find nothing in
the language of chapter 10 or rule 13 to preclude this award.  See Tex.Civ. Prac. & Rem. Code Ann. '' 10.001‑.004 (Vernon
2002); Tex. R. Civ. P. 13. 
However, because the award was not contingent on the motion and appeals being
unsuccessful, such an award results in a chilling effect on appellant's right
to pursue post-judgment motions and appeals.  See In re Ford Motor Co.,
988 S.W.2d 714, 718, 722 (Tex. 1998) (concluding that because the sanctions
award ordered Ford to pay $25,000 in attorney's fees if Ford sought mandamus
review of the sanctions order and was not conditioned on Ford's failure to
obtain relief, it effectively was a monetary penalty against Ford for
exercising its legal rights); cf. French, 164 S.W.3d at 492-93 (noting
that there was no chilling effect on appellant's right to appeal when the award
was contingent on being unsuccessful).

Therefore,
we conclude that the trial court erroneously awarded post-judgment trial
attorney's fees and appellate attorney's fees without making them conditional
on appellant being unsuccessful in pursuing the motion and appeals.  However,
we also conclude the error is harmless as to the motion for new trial and this
appeal because neither succeeded on the merits.  We therefore overrule
appellant's fourth, fifth and sixth issues as to the attorney's fees awarded
for the filing of the motion for new trial and this appeal.  We sustain,
however, the issues as to fees related to appellant's appeal to the Texas
Supreme Court, should he choose to do so.

IV. 
Conclusion

We
reform the judgment to provide that Judge Gonzales will receive attorney's fees
on appeal to the Texas Supreme Court, as set out in the trial court's judgment,
only if appellant does not prevail in that court.  As reformed, the judgment is
affirmed.

 

NELDA V.
RODRIGUEZ

Justice

 

Memorandum Opinion delivered and

filed this 28th day of September,
2006.









[1]Judge Gonzales is the Presiding Judge of County Court
at Law No. 2 in Nueces County, Texas.





[2]All claims by and between Perring and Judge Gonzales were
severed, made the subject of a separate suit, and assigned docket number
04-61344-2.  Both Condit and Judge Gonzales filed notices of appeal from this
severed cause; however, only Condit brings issues for our review.  The trial
court did not grant sanctions against Perring, individually; therefore, Condit
is the sole appellant from the sanctions order.

 

Moreover, while Perring was a defendant/plaintiff
below and summary judgment was entered against her, she has not appealed that
summary judgment.  See Wilborn v. Life Ambulance Servs., 163
S.W.3d 271, 274 (Tex. App.BEl Paso 2005,
pet. denied) (citing Texas Rule of Appellate Procedure 38.1(h) and noting for the record that appellants did not
brief the issue regarding the granting of the summary judgments and did not
reference it in the body of the brief, thus, the court consider that issue
waived).  Thus, summary judgment issues are not before us in this appeal.





[3]Neither Darlene McCormack nor Landlord Resources,
Inc., is a party to this appeal.





[4]There is a discrepancy in the record regarding when
the property was delivered to the court's chambers.  At the sanctions hearing,
appellant testified that he thought the property had been delivered to Judge
Gonzales on October 1st; however, the October 3rd docket entry and Judge
Gonzales's comments at the hearing on October 6, 2003, suggest that the
property arrived on October 3rd, the day of the telephone conference and the
day the interpleader action was filed.





[5]In his second amended interpleader petition filed
October 15, 2003, Rozelle asserted the following:

 

Interpleader
has been advised that more than one person may seek appointment as the
representative of the estate of Gordon Dancer.  Interpleader additionally has
been informed that a Last Will and Testament was likely expected naming Vernon
Nelson as Executor.  The probate code clearly gives the decedent's personal
representative the right and obligation to gather the decedent's assets. 
Furthermore, the Probate Code provides that any person who seeks appointment as
an administrator may be disqualified from service by the Court if the Court
finds that person "unsuitable".  Interpleader alleges that
information on the computers' hard drives may render Mary Dancer unsuitable as
administrator.  Upon information and belief, Interpleader believes the hard
drive of the computer contains assertions that Mrs. Dancer desired to have the
decedent beat up and that if he died she would be a rich widow.  Therefore,
there is clearly a potential conflict of claims to these computers without
scrutiny by the probate court for matters of her "suitability" would
risk destroying such evidence.  Offers to Ms. Dancer's attorney to allow
copying of the computer data were refused.  Interpleader and his client were
additionally threatened with criminal and civil liability by Mary Dancer while
at the same time being asked by a potential administrator or executor to
preserve the property.





[6]Appellant did not challenge the interpleader's action
as having no rival claims, being unreasonably delayed in filing, or not
unconditionally tendering the property.  See Union Gas Corp. v. Gisler,
129 S.W.3d 145, 152 (Tex. App.BCorpus Christi
2003, no pet.).





[7]The seven exhibits incorporated into the motion for
sanctions included a copy of each of the following: (1) plaintiffs' application
for temporary injunction; (2) Reece Rozelle's original interpleader petition;
(3) defendant Mary Dancer's [Perring's] original answer, cross and
counter-claims; (4) defendant Mary Dancer's [Perring's] motion to
disqualify/recuse presiding judge; (5) order of referral; (6) order for
temporary injunction; and (7) civil docket in case no. 02-62094-2 from October
1, 2003 through October 7, 2003.





[8]The order granting summary judgment does not appear in
the appellate record.





[9]Appellant also appears to be arguing that because the
property was allegedly stolen, Judge Gonzales's legal right to possession was
impacted.  However, appellant provides us no authority for this contention, and
we find none.





[10]Appellant contends that the court erred in finding
that Perring's suit seeking possession of her property violated rule 13 and/or
section 10.001 because no evidence supports such a finding or alternatively the
evidence is factually insufficient.  However, under an abuse of discretion
standard of review, we make an independent inquiry of the entire record to
determine if the trial court abused its discretion and are not limited to
reviewing the sufficiency of the evidence to support the findings of fact and
conclusions of law made.  See Chrysler Corp. v. Blackmon, 841 S.W.2d
844, 853 (Tex. 1992) (orig. proceeding).  Therefore, to the extent appellant
asserts legal and factual sufficiency challenges to the evidence, we will not
analyze the trial court's findings and conclusions separately from our analysis
of whether the trial court abused its discretion in sanctioning appellant.





[11]Appellant titles his third issue "The trial
court's award of attorney's fees is arbitrary, excessive, unreasonable and
without evidentiary support."  He does not, however, present clear and
concise arguments with citations to authorities and the record regarding
whether the fees are arbitrary or excessive.  See Tex. R. App. P. 38.1(h) (providing that only contentions that are
supported by clear and concise arguments with appropriate citations to
authorities and to the record will be considered on appeal).  Appellant argues only that the testimony of the
undisclosed witness was pure conjecture and speculation.  His authority
regarding the reasonableness of attorney's fees is not specific as to
sanctions.  Because these matters were reviewed in the first issue, we need not
address them again.  See id. at rule 47.1.